## J. J. Warren, v. Inter State Realty Company, Appellee, on appeal of T. E. Walters, Garnishee, Appellant.

### Gen. No. 19,337.    (Not to be reported in full.)

## J. J. Warren, Defendant in Error, v. Inter State Realty Company, Plaintiff in Error.

### Gen. No. 19,543.    (Not to be reported in full.)

Appeal from the Municipal Court of Chicago in case No. 19,337. Error to the Municipal Court of Chicago in case No. 19,543; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed as to No. 19,337. Reversed and remanded as to No. 19,543. Opinion filed April 28, 1915.

### Statement of the Case.

Action by J. J. Warren against the Inter State Realty Company, a corporation and T. E. Walters, garnishee.

No. 19,337 involves the propriety of a judgment in the Municipal Court for $2,469 in favor of the Inter State Realty Company against T. E. Walters, garnishee, for the use of J. J. Warren, and No. 19,543 involves a judgment for the like amount recovered in said court by said Warren against said Inter State Realty Company.

In No. 19,337 there was a trial by the court and the record is here on the appeal of the garnishee, Walters,

while in No. 19,543 there was a trial by jury, and the record is here on a writ of error prosecuted by the Inter State Realty Company. The two causes were consolidated for disposition in this court.

The controversy had its inception in the following agreement:

"Aurora, Illinois. This agreement made in triplicate this 18th day of March, 1911, by and between T. E. Walters, B. F. Smith, G. V. Smith and J. J. Warren all of Aurora, Illinois, for the purpose of an organization to buy and sell land. The principal plan is to act as selling agents for property owners. The organization to be known as the Inter State Realty Company. The immediate proposition is the entering into a selling contract with one N. J. Nagel of San Antonio, Texas, to sell twenty-three thousand acres situated in Webb County, Texas.

"The said B. F. Smith, and G. V. Smith agreeing to finance the proposition. That is to say, they will furnish the money for the purpose of investigating said land, incorporating, office expense, etc. In fact all necessary expense to further the sale of such lands, but not to exceed $......

"As soon as a part of said lands are sold and enough money or notes received to pay the running expenses then the said B. F. Smith or G. V. Smith shall be reimbursed for all money they have advanced for the above named purpose.

"As soon as they have received all of said money, then the said G. V. Smith, T. E. Walters and J. J. Warren shall share and share alike in all future profits of said organization until mutually dissolved.

"It is also agreed that the said G. V. Smith shall be elected treasurer of said organization.

"Witness our hands the day and year first above written.

T. E. WALTERS,
B. F. SMITH,
J. J. WARREN."

Following this agreement T. E. Walters and J. J. Warren went to Texas where they inspected the land,

and entered into an agreement, which, omitting provisions not here involved, is as follows:

"This agreement made and entered into this, the 28th day of March, 1911, between Esperanza Live Stock and Land Company, incorporated, of the City of Dallas, State of Texas, party of the first part, acting by C. J. Sorrells, its president, thereunto, duly authorized by resolution adopted by said corporation, party of the first part, and J. J. Warren and T. E. Walters of Chicago, Illinois, parties of the second part, Witnesseth;

"WHEREAS the party of the first part is the owner of approximately Twenty-five Thousand (25,000) acres of land in Webb County, Texas, near the station of Encinal, described and known as the Wolcott Ranch, all under fence, and the said parties of the second part are desirous of advertising and selling the said lands for the said party of the first part;

"Now, therefore, the said party of the first part agrees to and with the said parties of the second part as follows:    *    *    *

"Fourth:  The price for which said land shall be sold shall be such that the said first party will receive twenty ($20) dollars per acre for the land.    *    *    *

"Fifth:  The party of the second part shall have as their commission or profit for the sale of said land, all money or notes received by them over and above the stipulated price of twenty ($20) dollars per acre.    *    *    *

"Sixth:  The said parties of the second part agree and bind themselves to contract for sale as much of said land as fifteen hundred (1500) acres on or before the first day of January, 1912.    *    *    *

"Seventh:  It is actually agreed between the parties hereto that this contract shall be binding upon the parties of the first part and its successors or assigns, and that the parties of the second part may assign this contract to the Inter State Realty Company of Chicago, Illinois, and that when so assigned said Inter State Realty Company shall succeed to all the rights of the parties of the second part under this contract

and shall be bound by all of the agreements and obligations of the parties of the second part of this contract.

"Eighth: It is agreed between both parties hereto that this contract shall be and remain in force for a period of three years from the date hereof, at which time it shall lapse by its own terms.

"The failure of the parties of the second part or their assigns to make sales of said land as provided in this contract and especially in paragraph six thereof, shall, at the option of the party of the first part or its assigns, annul this contract in so far as it relates to land remaining unsold at the time of the forfeiture, and thereafter the parties of the second part, or their assigns shall have no claim against the first party relating to the land so remaining unsold.

"Witness the hand and seal of said corporation by C. J. Sorrell, its president, and the hands of the parties of the second part, in triplicate.

Esperanza Live Stock and Land Company,
By C. J. Sorrells, President.
J. J. Warren,
T. E. Walters.

Witness:
N. J. Nagel."

In April, 1911, the Inter State Realty Company was incorporated under the laws of Arizona, and officers were elected as follows: President, T. E. Walters; Secretary, J. J. Warren; Treasurer, G. V. Smith; Vice-president and Sales Manager, G. W. Hoyt. The same persons were also elected directors of the corporation.

The agreement of March 28, 1911, appears to have been assigned by Messrs. Warren and Walters to the corporation, which thereupon proceeded to operate thereunder.

Shortly following the organization of the corporation, B. F. Smith, who had agreed to finance the proposition under the contract of March 18, 1911, after advancing some money, became dissatisfied and re-

fused to be further bound by his agreement and thereupon T. E. Walters verbally agreed to assume and carry out the obligations of said Smith. On May 3, 1911, at a meeting of the directors and stockholders of the corporation, G. V. Smith tendered his resignation as treasurer and director and T. E. Walters was elected treasurer in his stead and W. J. Levery was elected a director. The latter was a gratuitous holder of one share of stock, but had no financial interest in the corporation. At a meeting of the directors then held, at which Messrs. Walters, Warren, Hoyt and Levery were present, on motion of Mr. Walters seconded by Mr. Hoyt, the salaries of Messrs. Walters, Hoyt and Warren were fixed at $300 per month. Hoyt and Warren were employed as salesmen, and their duties consisted in finding prospective purchasers for the lands in Texas, accompanying such prospective purchasers upon a tour of inspection of the lands, and in closing contracts for the purchase by them of said lands. The corporation maintained an office in Chicago, and prospective purchasers were sought for by it in Illinois and elsewhere; and in the instances in which contracts were procured by it to be made with persons in Illinois, such contracts were there executed and delivered. The corporation was not licensed to do business in Illinois.

The statement of claim filed by defendant in error, Warren, upon which he recovered a verdict and judgment against the plaintiff in error corporation for $2,469, was for $3,400, as salary and $85 for cash advanced for expenses.

CHARLES H. DARLING, for appellant and plaintiff in error.

WALTER H. ECKERT, for appellee and defendant in error.

Warren v. Inter State Realty Co., 192 Ill. App. 438.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

## Abstract of the Decision.

1. CORPORATIONS, § 19*—*for what purpose may not be organized.* A corporation for the purpose of transacting the business of real estate brokerage cannot be organized under any existing statute of this State.

2. CORPORATIONS, § 669*—*when foreign corporation cannot be authorized to enter State.* Since a corporation for the purpose of transacting the business of real estate brokerage may not be organized under any existing statute of this State, under the Foreign Corporation Act of 1905, sec. 2 (J. & A. ¶ 2527) a foreign corporation organized for that purpose cannot be authorized to do business in this State.

3. CORPORATIONS, § 709*—*when foreign corporation doing business in State.* A foreign corporation organized for the purpose of transacting a real estate brokerage business is doing business in this State, where it maintains a general office here and not merely solicits residents to purchase lands, but actually executes the contracts therefor in this State.

4. CORPORATIONS, § 745*—*when officer of foreign corporation cannot recover on contract.* A director of a corporation, in the absence of proof to the contrary, must be held to have been conversant with the character and scope of business in which the corporation was engaged, and the manner in which it was transacted, and where the corporation was illegally doing business in the State, he cannot recover upon a contract for compensation entered into with it.

5. CONTRACTS, § 157*—*when illegal contract not enforced.* Where a contract between a principal and an agent grows directly out of an illegal transaction, in the execution of which the agent has been concerned and in which he participated, the law will not assist the principal to recover from the agent or assist the agent to recover from the principal.

6. CORPORATIONS, § 714*—*when contract with foreign corporation illegal.* A contract between a foreign corporation, which could not be authorized to transact business in this State, and one of its officers, which contemplated the performance of services by him and the transaction of business by such corporation in this State, is illegal.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. CORPORATIONS, § 745*—*when foreign corporation not estopped to raise defense of ultra vires.* As between a foreign corporation and one of its officers, the former cannot be estopped to assert the illegality of a contract between them which was *ultra vires* because contemplating the transaction of business in this State, which the corporation was not authorized and could not under the law be authorized to transact.

8. ASSUMPSIT, ACTION OF, § 71*—*when quantum meruit proper for recovery on illegal contract.* The fact that a contract between a foreign corporation and one of its officers for the performance of services by the latter was illegal because it was not authorized to transact business in this State, does not preclude a recovery upon the *quantum meruit,* but in such case inquiry should be permitted as to the amount already paid to such officer under the terms of the contract.

9. APPEAL AND ERROR, § 1794*—*when judgment against garnishee reversed.* A reversal of a judgment against the defendant in the principal action necessarily requires a reversal of the judgment against the garnishee.

10. FRAUDS, STATUTE OF, § 24*—*when agreement not to be performed within one year.* An agreement on the part of one of the officers of a corporation to finance the corporation, which was organized to sell lands under a contract, giving it brokerage rights for a period of three years, is within the Statute of Frauds.